*51 Opinion of
the Court.
William and Robert Blackburn exhibited their bill against James Best, charging that the complainant, William, and Best, made a verbal agreement to *52 purchase a tract of land of Simon Kenton, or of James Dobbins, who had purchased of Kenton; that Best was to make the purchase, and said William was to pay one half the price, and to have one equal moiety of the land; that Best did purchase a bond from Dobbins for 341 acres of land, purchased by him of Simon Kenton, or of John Kenton as agent or trustee for said Simon, which bond was to have been in partnership, on said William’s paying half the purchase money. The bill further states, that Best informed said William that the purchase was made at the price of $600; that in consequence thereof, and of the verbal agreement between them aforesaid, the complainants, with a certain Vanzant, agreed, by writing, to pay each one fourth part of the purchase money, and to have each an equal part of the land, as described in the bond; that the complainants and Vanzant executed their bonds to Best, each for one fourth of the price that Best had given, as they then supposed; that it was agreed that a deed should be taken from Kenton to the said four persons equally; that shortly after this agreement, the land was marked off by metes and bounds; but that Best has accepted a deed from Kenton, in discharge of the bond, for land different from that described in the bond, and excluding 40 or 50 acres which they believed they had purchased, worth from three to four dollars per acre; and that Best had given only $475, instead of $600, for the bond.
The relief prayed in the original bill is, that the judgments at law on their bonds may be enjoined; that they may have an allowance against Best for the land not included in the deed taken from Kenton, but which belongs to the original purchase, and that an abatement may be made in their bonds, in proportion to the excess of $600 above the price actually given by Best for the land.
The amended bill prays that the contract may be rescinded, as between the complainants and Best, for the fraud practised in concealing the original purchase money, and upon the principle “ that the land purchased by the parties aforesaid, by the bond, cannot be conveyed, and your orators should not be compelled to receive any other land.”
The answer denies that the complainant, William, was a partner in the purchase, originally; but admits *53 that a conversation was had between them, respecting the intended purchase; that each were to go together, to make the purchase, and each to give separate bonds for the payment of their proportion of the sum to be given. Best alleges that he refused to become jointly bound with William, the complainant; that, as the said complainant did not go forward to make the purchase, nor mention any thing further on the subject, he felt himself at liberty, and made the purchase afterwards in his own name, and upon his own responsibility, for the sum of $475, of which he paid down $70, and gave his bond for the balance, which he conceived was a very reduced price; that Dobbins at first asked $600. He states that the contract between the complainants, Vanzant and himself, was a new, original contract, in which they agreed to give $450 for three-fourths of the land contained in the bond as purchased by him, that is to say, three-fourths of 34 acres; that the deed was made to the four jointly. He does not admit that the deed from Kenton is variant from the bond; but that he had retained the bond upon Kenton; that when he accepted the deed, it was agreed and understood by Kenton, that if it did not comport with the bond, he would execute another deed; that the complainants made some objection to the deed, and were informed by Kenton, that if the deed did not conform to the bond, and they would get one written according with it, he would execute it at any time; that the deed made, is, therefore, not yet recorded. He admits, that in trafficking with the complainants about the bargain, he might have told them he had given $600 for the land; but denies that he was under any promise or obligation to let the complainants, or either of them, into the purchase, at what he gave, nor did he agree so to do; but that the bargain was made on the application of the complainants and Vanzant to purchase an interest of him in the land, for which they agreed to give the sum of $450.
The circuit court decreed a dissolution of the contract, from which Best has appealed.
That Best acted from sinister views, in accepting the deed complained of, is not charged by the bill. The carelessness or unskilfulness of the surveyor in making his report, or of the clerk in copying it, or of both; some general expressions in the bond, which may or *54 may not comport with the deed; some difference about Duvall’s boundary, and about Moody and M’Millan’s boundary, with the want of sufficient data, and of proper parties, to reduce these general expressions to certainty, and to settle those differences, do not enable us to say how far the deed accepted by Best from Kenton corresponds with, or varies from the bond. It is not charged, that Kenton is Unable or unwilling to rectify the mistake, if one has been committed, in drawing the deed; but, on the contrary, it appears that Kenton has been willing to rectify, as he is bound to do, any discordance between the bond and deed; If the complainants had really supposed Kenton was unwilling or unable to execute a conveyance according to his obligation, in which they had purchased an interest; or that serious difficulties existed, as to the boundaries of Duvall, and Moody and M’Millan; or that Kenton was released from his obligation, by the unwarranted act of Best, then their bill should have been differently framed, and not with Best as a solitary defendant. To insist that they came in as partners in the original purchase made by Best, and yet to make him responsible, without fault, for the title to the land, seems to be somewhat inconsistent. But, in either way, a decree for the rescision of their contract with Best, predicated on the variance between the bond and the deed of Kenton, must be erroneous, and unwarranted by the pleadings and exhibits.
As the misrepresentation of the price given by Best, although reprehensible as a breach of morality, does not alter the intrinsic value, quality or usufruct of the land, but leaves the benefit to be derived from the contract just as though no such misrepresentation had been made, it cannot afford cause for setting aside the contract in toto. The only question is, whether the complainants shall have an abatement in the price which they bound themselves to give. This depends upon whether they came in as partners in Best’s purchase from Dobbins, of Kenton’s bond, or as subsequent purchasers upon a distinct consideration. If they were let in as partners, only paying a part of the price proportioned to their respective interests, then the misstatement of the price by Best enters into, and affects the consideration of the bonds. But if they were not let in as partners in the price and purchase, then the sum *55 paid by Best is a mere shadow; the bond upon Kenton for the land is the substance of the contract. The statement in the bill itself, resembles a new, independent agreement between the parties. The answer avers it to be so, and denies that Blackburn, the supposed previous partner, had any claim as such. The answer is supported by the depositions of Braxton Pollard and Robert Brownfield, and by the agreement between the parties. The reservation of one third of the wood, and of the water, to Best; the contract about digging for salt water, and the manner in which the expences were to be defrayed, speak the language of a new contract. By the partnership which is alleged as the foundation of the claim for abatement, Best had one half; now he has a fourth of the land, but a third of the wood and water; and he has three partners, instead of one. This shows that Best was considered as having the claim, and as dealing out his interest in it as he pleased to consent. A partnership existing only by parol, where one of the partners neither advanced his money nor his credit, gave no assistance whatever, and was bound or not bound at his election, does not appear worthy of the consideration of a court of equity, whereby to impeach a contract solemnly executed by the written obligation of the parties. The whole weight of evidence shows that $450 was the consideration which moved Best to enter into the agreement with the complainants and Vanzant. Pollard, in his deposition of November 1805, says, that he was called upon to take notice of the agreement, before the writing was drawn; that after the execution thereof, Best informed the complainants he had paid but $475 for the land, and if they were dissatisfied, he would relinquish the contract.
It does not appear that the complainants were entitled to relief on either suggestion of equity in the bill contained. Wherefore, it is decreed and ordered, that the decree of the circuit court, made between the parties, be, and the same is hereby reversed, set aside and annulled. The cause is remanded to the said circuit court, with directions to dissolve the complainants’ injunction, with ten per centum damages on the sum enjoined by them respectively, and to dismiss the bill with costs.
*56 Note on the case, Holley vs. Wilkerson.
IN the year 1780, an article of agreement was entered into, by which Wilkerson agreed to serve Holley one year, and Holley agreed, in consideration thereof, to convey him one hundred acres of land in Kentucky. Wilkerson, at the end of nine months, left Holley’s employment, and never would return. More than twenty years afterwards, he filed a bill in chancery, to obtain a conveyance of the hundred acres of land, or the value of it. The circuit court of Clarke decreed him two hundred and ten pounds in money. The court of appeals reversed the decree, and directed a decree to be entered for the value, in money, of the service of a hireling for nine months, in the year 1780.
I have taken the statement of facts entirely from the opinion of the court of appeals; and my reason for not publishing the case is, that I know of no principle of law, equity, or morality, which could justify a decree in favor of Wilkerson for any thing; and even if the case were doubtful on principle, it appears to me to have been overruled by the case of Buck vs. Jouitt's administrators, 3 Litt. 229. Littell.